IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THOMAS MORRIS, on behalf of and as Executor of the Estate of Amy F. Morris, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:12-CV-1020-WKW LEAD CASE |
| TRUST COMPANY OF VIRGINIA, *et al.*, | ) ) ) | [WO] |
| Defendants. | ) | |
| GEORGE MASON UNIVERSITY FOUNDATION, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:13-CV-930-WKW MEMBER CASE |
| THOMAS W. MORRIS, *et al.*, | ) ) | [WO] |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are Karen Loulakis's motion to dismiss in the lead case (Doc. # 36), which has been fully briefed, (Docs. # 41, 44), and motion for summary judgment in the member case (Doc. # 83, 84), to which Thomas W.

Morris and Sharon Duncan responded (Doc. # 90).[1]  Ms. Loulakis is a Defendant in the lead case and a third-party defendant in the member case.  Mr. Morris is the plaintiff in the lead case; he and Ms. Duncan are defendants, counter-plaintiffs, and third-party plaintiffs in the member case.  Upon consideration of the parties' arguments and the relevant law, the court concludes that Ms. Loulakis's motion to dismiss in the lead case is due to be granted in part and denied in part, and that her motion for summary judgment in the member case is due to be denied as moot.

## I.  JURISDICTION AND VENUE

Subject-matter jurisdiction is proper pursuant to 28 U.S.C. § 1332(a).  The amount in controversy exceeds $75,000, and there is complete diversity of citizenship between the opposing parties in each case.[2]  Ms. Loulakis disputes the court's personal jurisdiction over her and the propriety of venue in this forum.

## II.  STANDARDS OF REVIEW

### A.  <u>Motion to Dismiss for Insufficient Service of Process</u>

A Rule 12(b)(5) motion is the means of challenging the lack of delivery of the summons and complaint.  Rule 4 governs delivery of the summons and

---

[1] In this district's parlance, "lead case" and "member case" are terms used to identify two or more cases that have been consolidated by court order.  A lead case is typically the older case and is designated as the place where case filings continue to be docketed.  A member case is a non-lead case.  Documents filed prior to consolidation remain on the docket of the member case.

[2] Mr. Morris is a citizen of Alabama; Ms. Duncan is a citizen of Maryland; the Trust Company of Virginia, George Mason University Foundation, Inc., and Karen Loulakis are citizens of Virginia.

complaint.  It provides specifically that "[i]f a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).

### B.   Motion to Dismiss for Lack of Personal Jurisdiction

When considering a motion to dismiss for lack of personal jurisdiction, "[t]he court must construe the allegations in the complaint as true, to the extent they are uncontroverted by [the] defendant's affidavits or deposition testimony." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).  "[W]here the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff." *Id.* When no evidentiary hearing is held, the plaintiff need only establish a prima facie case of jurisdiction by presenting evidence sufficient to defeat a motion for judgment as a matter of law.  *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).  By that standard, the plaintiff must offer evidence that creates a genuine dispute of material fact as to the court's personal jurisdiction over the defendant.

### III.  BACKGROUND

A full recitation of the facts and proceedings in these cases is unnecessary. A substantial but abbreviated version of events follows.

A.    <u>Facts</u>

Amy Falcon Morris died testate in Montgomery, Alabama, in March 2011. Amy's first will was prepared in 1998 by Ms. Loulakis, an attorney from Virginia, while Amy lived in Virginia and while she had the requisite mental capacity to devise a will.  The 1998 Will named Ms. Loulakis as the Executor of Amy's Estate and named the Foundation as the residual beneficiary of the Estate.  Mr. Morris and Ms. Duncan were basically disinherited by their mother in that Will.

In February 2007, Amy was in a car accident in Virginia Beach, Virginia. Shortly thereafter, Mr. Morris and his sister, Ms. Duncan, filed an action in the Circuit Court of Virginia Beach, Virginia (hereinafter "the Virginia Court"), in which they sought to be appointed as Amy's guardians and conservators.  Judge A. Bonwill Shockley was assigned to preside over the case in the Virginia Court.  At the outset of those proceedings, Mr. Morris and Ms. Duncan, with the assistance of counsel, represented to the Virginia Court that Amy "suffers from dementia of Alzheimer's type with psychosis.  Her dementia has progressed to the point that she does not recognize [Mr. Morris and Ms. Duncan] and cannot communicate in complete sentences with them."  (Member Case Doc. # 52-3, at ¶ 6.)  Mr. Morris and Ms. Duncan further averred that Amy was "physically and mentally incapacitated" and there was no indication that she would recover from her disability.  (Member Case Doc. # 52-3, at ¶ 7.)

4

In late April or early May of 2007, during the pendency of the guardianship and conservatorship proceedings, Mr. Morris moved Amy to a residential nursing facility in Montgomery, Alabama, the city where he resides.  The parties dispute whether the move was proper.  Montgomery Attorney Lee Hamilton drafted a new will for Amy, which Amy executed on May 25, 2007.  The 2007 Will names Mr. Morris the Executor of Amy's Estate and makes Mr. Morris, Ms. Duncan, and their families the beneficiaries of the Estate.  Mr. Morris and Mrs. Duncan represent that the 2007 Will was drafted and executed according to Amy's wishes.

During the pendency of the guardianship and conservatorship proceedings in the Virginia Court, Ms. Loulakis intervened and asserted that Amy's interests differed from Mr. Morris and Ms. Duncan's interests.  The Virginia Court appointed Ms. Loulakis as Amy's counsel in the proceedings.  (*See* Lead Case Doc. # 35-1, at 23.)  George Mason University Foundation (hereinafter "the Foundation") also intervened in the Virginia Court proceedings, allegedly at the prompting of Ms. Loulakis, based on its understanding that it would be the residual beneficiary of Amy's Estate under the 1998 Will.

While Ms. Loulakis was involved in the Virginia Court proceedings as Amy's attorney, she came to Amy's nursing home facility in Montgomery in July 2007, allegedly with a forged order from Montgomery County Probate Judge Reese McKinney authorizing her visit to see Amy.  (Lead Case Doc. # 29, at 3.)

Other than that visit, Ms. Loulakis has never been to Alabama and has never practiced law in Alabama.  Mr. Morris and Ms. Duncan claim that Amy was alert and communicated her wishes that Ms. Loulakis and the Foundation cease meddling in her affairs.  Even so, Ms. Loulakis allegedly lied to the Virginia Court that Amy was unresponsive to inquiries when Ms. Loulakis tried to question her.  Mr. Morris and Ms. Duncan claim further that Montgomery Attorney Ed Parrish witnessed Ms. Loulakis's visit with Ms. Morris, but Judge Shockley refused to hear Mr. Parrish's testimony.

In February 2008, after a hearing, the Virginia Court entered orders retroactively declaring Amy to be an incapacitated person as of February 22, 2007, appointing Mr. Morris as Amy's guardian only, and appointing the Trust Company of Virginia (hereinafter "the Trust Company") as conservator of her property.  (Lead Case Doc. # 35-1, at 19–20, ¶¶ A, G.)  The Virginia Court found that Amy's incapacity was perpetual and that she would not improve.  (Lead Case Doc. # 35-1, at 17, ¶ 7.)  The Virginia Court also relieved Amy of her authority to perform legal acts, and significantly, the order declared that the 2007 Will was "invalid and of no effect."  (Lead Case Doc. # 35-1, at 20–21, ¶ L.)  The Virginia Court declared all transfers of Amy's assets after February 22, 2007, void *ab initio* and directed Mr. Morris and Ms. Duncan to convey to the Trust Company Amy's assets that they had transferred to themselves by power of attorney or other documents executed by

Amy in Alabama.  (Lead Case Doc. # 35-1, at 22, ¶¶ Q–R.)[3]  Substantial monetary judgments were entered against Mr. Morris and Ms. Duncan and in favor of the Foundation ($100,000) and Amy ($1,125,222).

After Amy died on March 25, 2011, Mr. Morris initiated probate proceedings of the 2007 Will in Montgomery County Probate Court (hereinafter the "Alabama Probate Court"), notwithstanding the Virginia Court's 2008 determination that Amy lacked the capacity to devise the 2007 Will.  On April 7, 2011, the Alabama Probate Court probated Amy's will and issued certified letters testamentary to Mr. Morris as Executor of the Estate.  (Lead Case Doc. # 41-1, at 1.) However, because of Mr. Morris's and Ms. Loulakis's competing wills, proceedings were also ongoing in Virginia, where the Trust Company filed an interpleader action concerning the disposition of the remainder of Amy's Estate. The Virginia Court admitted the 1998 Will to probate in August 2011.  The Virginia Court found, based on its prior rulings in 2008, that Virginia remained Amy's legal domicile at the time of her death.  (*See* Lead Case Doc. # 35-2, at 7–8, ¶¶ M–N; Member Case Doc. # 52-12.)  It consequently appointed Ms. Loulakis – not Mr. Morris – as the Executor of Amy's Estate.  (*See* Lead Case Doc. # 35-2, at 8; Member Case Doc. # 52-12.)

---

[3] The same document is in the member case record at Document # 52-4.

Mr. Morris alleges that Ms. Loulakis failed to protect Amy's assets, both before and after Amy's death, and that she and the Trust Company proceeded to oppose Mr. Morris in the Virginia interpleader suit, notwithstanding their knowledge of Mr. Morris's first-in-time appointment as Executor of Amy's Estate in the Alabama Probate Court.  On November 26, 2012, Ms. Loulakis, in her capacity as Executor, executed an Instrument of Assignment conveying to the Foundation all of the Estate's interest in the December 19, 2008 judgment in the amount of $1,125,222 against Mr. Morris and Ms. Duncan.  (*See* Member Case Doc. # 41-3.)

## B.    **Procedural History**

### 1.    *Lead Case Proceedings*

Mr. Morris sued the Trust Company, the Foundation, and Ms. Loulakis in the Circuit Court of Montgomery County, Alabama, on October 19, 2012.  The Trust Company removed the case to federal court.  (Lead Case Doc. # 1.)  Ms. Loulakis had not been served with process, but she filed her consent to the Trust Company's removal.  (Lead Case Doc. # 2.)  Both the Foundation and the Trust Company filed motions to dismiss the complaint for failure to state claims against them.  (Lead Case Docs. # 8–9.)  While the motions to dismiss were pending, the court directed Mr. Morris to show cause why his claims against Ms. Loulakis should not be dismissed with prejudice pursuant to Federal Rule of Civil Procedure

8

4(m).  (Lead Case Doc. # 21.)  Mr. Morris responded by arguing that Ms. Loulakis was evading service.  (Lead Case Doc. # 24.)  He further argued that he had regarded Ms. Loulakis's Consent to the Notice of Removal as an acknowledgment of service of the lawsuit against her.  Mr. Morris prepared an alias summons, which was served on Ms. Loulakis with a copy of the complaint on April 22, 2013. Ms. Loulakis then filed her answer in which she raised various Rule 12(b) defenses, including lack of personal jurisdiction, improper venue, and insufficient service of process.  (Lead Case Doc. # 27.)

The court entered a memorandum opinion and order granting in part and denying in part the Trust Company and the Foundation's motions to dismiss the original complaint.  (Lead Case Doc. # 28.)  The court concluded that Mr. Morris could not sue the three defendants for torts committed against Amy because the torts did not survive her death, or for torts against himself because he abandoned those claims by failing to respond to the motions to dismiss those claims.  (Lead Case Doc. # 28, at 5–7.)  This left only the tort claims against Amy's Estate, but, the court found that the original complaint failed to develop the facts adequately to give the lead case defendants notice of which torts they allegedly committed against the Estate.  (*See* Lead Case Doc. # 28, at 7.)  Consequently, the court struck the original complaint and directed Mr. Morris to file an amended complaint.  Mr. Morris filed an amended complaint, but the pleading still blurs the lines and

conflates alleged torts against Amy with alleged torts against the Estate.  (*See* Lead Case Doc. # 29.)

Mr. Morris's amended complaint raises seven claims, including three against Ms. Loulakis: (1)  Count Five for breach of fiduciary duty; (2) Count Six for breach of duty under Alabama's Legal Services Liability Act, Ala. Code § 6-5-570; and (7) Count Seven for civil conspiracy with the Trust Company and the Foundation.  Ms. Loulakis moves to dismiss the amended complaint for lack of personal jurisdiction.  (Doc. # 36.)

### 2.    *Member Case Proceedings*

On December 21, 2011, the Foundation filed suit against Mr. Morris and Ms. Duncan in the Eastern District of Virginia to enforce the Virginia Court's judgment in its favor for $100,000, plus interest.  On August 19, 2013, with leave of court, the Foundation amended its complaint to add a claim to enforce the $1,125,222, plus interest, judgment in favor of Amy, which Ms. Loulakis, as Executor, assigned to the Foundation as the beneficiary under the 1998 Will.  (*See* Member Case Doc. # 52-14.)

Mr. Morris and Ms. Duncan filed an answer to the amended complaint with counterclaims against the Foundation and "crossclaims" against Ms. Loulakis and the Trust Company.    (Member Case Doc. # 49.)   The crossclaims are more

accurately labeled third-party claims.[4]  The third-party claims against Ms. Loulakis in the member case include counts for negligence, wantonness, conspiracy, breach of fiduciary duty, conversion, abuse of process, and tortious interference with expectancy of inheritance.[5]  Mr. Morris and Ms. Duncan seek millions of dollars in compensatory and punitive damages.  (Member Case Doc. # 49, at 41.)

On November 7, 2013, Karen Loulakis, proceeding *pro se*, answered the "crossclaims," (Member Case Doc. # 82) and filed a motion for summary judgment in which she adopted the Foundation's arguments in favor of summary judgment – which are, in short, that Mr. Morris is not the executor of Amy's Estate.  (Member Case Docs. # 83, 84.)

### 3.  *Transfer and Consolidation*

Accepting an invitation to opt-out of a quandary, the Eastern District of Virginia granted the Trust Company's Motion to Transfer Venue to this court on

---

[4] Neither Ms. Loulakis nor the Trust Company was originally a party to the member case litigation.  Pursuant to Rule 13(g), "a crossclaim may only be asserted against *coparties* in the action."  Charles Alan Wright, et al. 6 Fed. Practice & Procedure § 1431 (3d ed.) (emphasis added).  Thus, Mr. Morris and Ms. Duncan's claims against Ms. Loulakis and the Trust Company are really third-party claims.  *See Newhouse v. Probert*, 608 F. Supp. 978, 985 (W.D. Mich. 1985) (concluding that where a defendant filed what was captioned as a 'cross-complaint' and the cross defendants were not parties to the action, the cross complaint was actually a third-party complaint subject to the requirements of Rule 14(a)).

[5] The tort claims pending in the lead case are not identical to the tort claims pending in the member case.  In the lead case, Mr. Morris sues only "on behalf of and as Executor for the Estate of Amy F. Morris."  (Lead Case Doc. # 36, at 1.)  Even if Mr. Morris had not re-pleaded his amended complaint as he did, the court has dismissed the claims he filed on behalf of himself as abandoned or as failing to state a claim under Alabama law.  (*See* Lead Case Doc. # 28, at 6–7 & n.4.)  In the member case, Mr. Morris and Ms. Duncan raise their counterclaims and third-party claims "in [their] individual capacit[ies]." (Member Case Doc. # 49.)

December 9, 2013.  (*See* Member Case Docs. # 92, 93.)  The transferring court did not receive briefing from all of the parties before transferring the action, and Ms. Loulakis in particular was unable to assert her opposition to transfer on the grounds that Alabama's courts lack personal jurisdiction over her.  Since the transfer, Ms. Loulakis has maintained her objections to lack of personal jurisdiction and improper venue.  (Lead Case Doc. # 54.)  After the Eastern District of Virginia transferred the member case to this district, the two actions were consolidated upon the Trust Company's motion and after finding that consolidation was the simplest and most expeditious way of resolving these proceedings.  (*See* Lead Case Doc. # 57.)

## IV.  DISCUSSION

### A.  <u>Lead Case Motion to Dismiss (Doc. # 36)</u>

#### 1.  *Jurisdictional Bases*

Ms. Loulakis's motion to dismiss raises numerous grounds for dismissal, but the court must address Ms. Loulakis's insufficient service of process and personal jurisdiction arguments first.  *See Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1360 (11th Cir. 2008) ("Service of process is a jurisdictional requirement:  a court lacks jurisdiction over the person of a defendant when that defendant has not been served."); *Jackson v. Warden, FCC Coleman-USP*, 259 F. App'x 181, 183 (11th Cir. 2007) (holding that it was "improper for the

district court to have reached the merits" when plaintiff failed to properly serve defendants); *Sinochem Int'l Co. v. Malaysia Int'l Shipping Co.*, 549 U.S. 422, 430–31 (2007) ("A federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of a claim of suit . . . and the parties. . . ."); *Madara*, 916 F.2d at 1513–14 (holding that district court should have addressed 12(b)(2) arguments before 12(b)(6) arguments).[6]

Ms. Loulakis raised defenses pursuant to Rule 12(b)(2) and (5) in her answer to the original complaint.  (*See* Lead Case Doc. # 27, at 2.)  After Mr. Morris amended his complaint, Ms. Loulakis timely filed her motion to dismiss the amended complaint and asserted the defenses again.  She has preserved her defenses, *see* Fed. R. Civ. P. 12(h)(1), and has not waived them by participating in this litigation.  *See Matthews v. Brookstone Stores, Inc.*, 431 F. Supp. 2d 1219, 1222–25 (S.D. Ala. 2006) (Steele, J.) (detailing the circumstances, not present in this case, under which a party waives his personal jurisdiction defense by substantially participating in the litigation).  Mr. Morris's argument that Ms. Loulakis waived her personal jurisdiction objection, (*see* Lead Case Doc. # 41, at 12), is without merit.

---

[6] Ms. Loulakis also raises a 12(b)(3) defense.  Venue, however, is not a jurisdictional issue; it "is merely a privilege of the parties."  *Manley v. Engram*, 755 F.2d 1463 (11th Cir. 1985).

### a.    Ms. Loulakis's 12(b)(5) Defense

As Ms. Loulakis points out in her motion, the court raised the issue of insufficient service of process before she did.  (*See* Lead Case Doc. # 36, at 22.) The issue of Ms. Loulakis's service was not resolved, so a discussion of her 12(b)(5) argument precedes discussion of the 12(b)(2) argument.

On April 16, 2013, Mr. Morris was directed to show cause for his failure to serve Ms. Loulakis with a summons and complaint within 120 days of the removal of the case to federal court.  (Lead Case Doc. # 21.)  Mr. Morris responded by arguing that he tried to serve Ms. Loulakis at multiple addresses to no avail, and concluded that she was evading service.   He further responded that he misinterpreted Ms. Loulakis's consent to the notice of removal as an acknowledgement of service.  (Lead Case Doc. # 24.)  Ms. Loulakis replied that Mr. Morris had not actually attempted to serve her as many times as he represented and argued that he failed to show good cause for his failure to serve her; thus, she asserted that the claims against her should be dismissed without prejudice pursuant to Rule 4(m).  (Lead Case Doc. # 25.)  The court never returned to the issue of whether Mr. Morris had shown good cause.  Ms. Loulakis was served by certified mail within days of the show cause order on April 22, 2013.  She argues that Mr. Morris's claims are due to be dismissed for insufficient service of process under Rule 12(b)(5) and Rule 4(m).

The Eleventh Circuit has held that "[g]ood cause exists 'only when some outside factor, such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." *Lepone-Dempsey v. Carroll Cnty. Comm'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007) (quoting *Prisco v. Frank*, 929 F.2d 603, 604 (11th Cir. 1991)).  Here, Mr. Morris relied on his counsel's faulty assumption that Ms. Loulakis's consent to removal amounted to an acknowledgment or waiver of service.  Thus, Mr. Morris has shown good cause.

But, "[e]ven in the absence of good cause," it is still within the court's "discretion to extend the time for service of process." *Lepone-Dempsey*, 929 F.2d at 1281 (citing *Henderson v. United States*, 517 U.S. 654, 662–63 (1996)).  By not returning to the issue of service until now, the court acceded to an extension of time.  Mr. Morris promptly served Ms. Loulakis with process within days of the court's show cause order, and the case has progressed with Ms. Loulakis as a participant.

Because the court has excused Mr. Morris's untimely service of process under Rule 4(m) and allowed an extension of time, the court concludes that Ms. Loulakis's 12(b)(5) motion to dismiss for insufficient service of process is due to be denied.

### b.   Ms. Loulakis's 12(b)(2) Defense

A personal jurisdiction challenge in a federal court requires a two-part analysis. The court must first determine its jurisdiction under the forum state's long-arm statute; second, it must decide whether exercising jurisdiction is in agreement with principles of constitutional due process. Alabama's long-arm statute permits state and federal courts in Alabama to exercise personal jurisdiction "to the fullest extent constitutionally permissible." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (citing Ala. R. Civ. P. 4.2(b)). Thus, only one analysis is necessary because the limits of Alabama's long-arm jurisdiction are coterminous with constitutional due process requirements.

The Due Process Clause requires that (1) a defendant have "minimum contacts" with the forum state, and that (2) the court's exercise of jurisdiction conform with "traditional notions of fair play and substantial justice." *Burnham v. Superior Ct. of Cal.*, 495 U.S. 604, 618 (1990).

### i.   Minimum Contacts

When looking for "minimum contacts" in support of personal jurisdiction, it is imperative to observe the distinction between general and specific jurisdiction. "General jurisdiction" over a defendant arises from the defendant's continuous and systematic contacts with the forum state that are unrelated to the suit, while "specific jurisdiction" arises from a defendant's sporadic or limited contacts with

the forum state that are at issue in the plaintiff's cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–415 nn.8–9 (1984). Ms. Loulakis argues that the court cannot exercise general jurisdiction over her because her contact with Alabama has not been continuous and systematic. (Lead Case Doc. # 36, at 5 (citing *Helicopteros*, 466 U.S. at 416).) Mr. Morris fails to identify any facts supporting the court's "general jurisdiction" over Ms. Loulakis; hence, the court looks only for specific jurisdiction

"[S]pecific personal jurisdiction is a claim-specific inquiry." *Turner v. Regions Bank*, 770 F. Supp. 2d 1244, 1248 (M.D. Ala. 2011) (Thompson, J.) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) (alteration omitted)). Mr. Morris therefore must allege specific facts supporting personal jurisdiction as to each of his claims against Ms. Loulakis. Specific jurisdiction purportedly arises from Ms. Loulakis's contact with Amy after Mr. Morris moved Amy to Montgomery in 2007. Ms. Loulakis does not deny that she visited Alabama on July 28, 2007, pursuant to her appointment as Amy's attorney in the Virginia Court's guardianship and conservatorship proceedings. (*See* Lead Case Doc. # 36-1, Aff. of Loulakis.) Nevertheless, Ms. Loulakis asserts that the court lacks specific jurisdiction over her because: (1) her single contact with Alabama neither relates to nor gives rise to Mr. Morris's causes of action on behalf of Amy's Estate; (2) she did not purposefully avail herself of the privilege of

17

conducting an activity in Alabama, and her limited representation of Amy was during Amy's incapacity while Amy remained domiciled in Virginia; and (3) her actions are not of such a character that she should reasonably anticipate being haled into court in Alabama. *See Sloss*, 488 F.3d at 925 (requiring that defendant's contacts with forum state meet these three criteria).

Mr. Morris responds by generally pointing to case law that broadly defines due process requirements. More specifically, he maintains that the court has specific jurisdiction over Ms. Loulakis by virtue of her "purported representation of" Amy and the 2007 trip to see Amy while Amy lived in Alabama. (Lead Case Doc. # 41, at 12.) Mr. Morris does not explain how Ms. Loulakis's visit with Amy is connected to any claim he brings on behalf of Amy's Estate, which was non-existent during Amy's life. Mr. Morris also suggests that Ms. Loulakis's participation in guardianship and conservatorship litigation "while [Amy] was a resident of Alabama" further ties Ms. Loulakis to Alabama. (Lead Case Doc. # 41, at 12.)

Mr. Morris's argument ignores that Ms. Loulakis became involved in litigation by virtue of her attorney-client relationship with Amy that began while Amy was in Virginia, and further, that Ms. Loulakis lacked control over Amy's incapacity and relocation to Alabama. While neither party discusses *Hanson v. Denckla*, 357 U.S. 235 (1958), its holding is instructive. There, the Supreme Court

18

found that a Florida court lacked personal jurisdiction over a Delaware trustee where the settlor who created the trust relocated to Florida. *Id.* at 251–52. The ruling in *Hanson* supports the premise that the unilateral activity (*e.g.*, a physical relocation) of one person claiming some relationship with a nonresident defendant does not cause the nonresident defendant to suddenly acquire minimum contacts with the forum state. In other words, Ms. Loulakis should not be considered to have automatically established minimum contacts with Alabama simply because her client, Amy, was relocated to Montgomery from Virginia Beach.

>          ii.     Fair Play and Substantial Justice

Additionally, with respect to the "fair play and substantial justice" prong of the due process inquiry, Ms. Loulakis contends that the court should consider (1) the burden she would experience in litigating in Alabama rather than Virginia, (2) Alabama's interest in adjudicating the dispute, and (3) Mr. Morris's interest in obtaining convenient and effective relief. *See Sloss*, 488 F.3d at 933 (considering these three factors and two other factors relating to international interests). Ms. Loulakis avers that (1) litigating in Alabama is burdensome to her; (2) the law and courts of Virginia, not Alabama, govern the 1998 Will and her appointment as Executor under the 1998 Will; and (3) Mr. Morris has frequently litigated in Virginia. Mr. Morris makes no responsive argument with respect to the "fair play and substantial justice" prong of the personal jurisdiction standard.

iii.    Findings

Mr. Morris has pleaded three claims against Ms. Loulakis (*see* Lead Case Doc. # 29, at 10–13 (Counts Five, Six, and Seven)), but as the court previously ruled when dismissing the original complaint, only claims against Amy's Estate are viable, (*see* Lead Case Doc. # 28).  Ms. Loulakis correctly points out that her only contact with Alabama was in 2007 when she was Amy's attorney, before Amy's Estate came into existence.  Mr. Morris makes no allegation that Ms. Loulakis has made contact with Alabama since Amy's death, or that Ms. Loulakis has purposefully availed herself of the privilege of representing Amy's Estate in this jurisdiction.  To the contrary, Ms. Loulakis's claim that she has represented Amy's Estate in Virginia exclusively is uncontroverted by Mr. Morris.

Mr. Morris fails to establish even a prima facie case of specific personal jurisdiction over Ms. Loulakis.  *See Madara*, 916 F.2d at 1514.  Because Ms. Loulakis's limited contact with Alabama is not associated with any of Mr. Morris's claims on behalf Amy's Estate, *see Sloss*, 488 F.3d at 925, Ms. Loulakis lacks minimum contacts with Alabama.  Even if Ms. Loulakis's 2007 visit justified this court's personal jurisdiction over her, requiring Ms. Loulakis to defend a suit in this forum would not comport with traditional notions of fair play and substantial justice.

For these reasons, Ms. Loulakis's motion to dismiss for lack of personal jurisdiction is due to be granted.

### 2. *Non-jurisdictional Bases*

Without personal jurisdiction over Ms. Loulakis, this court should not consider her other arguments for dismissal pursuant to Rule 12(b)(3) or 12(b)(6), and her motion is due to be denied as moot with respect to those arguments.[7]

## B. Member Case Motion for Summary Judgment (Doc. # 83)

Because personal jurisdiction over Ms. Loulakis is lacking, her motion for summary judgment in the member case is due to be denied as moot.

## V. CONCLUSION

In accordance with the foregoing analysis, it is ORDERED that

(1)    Ms. Loulakis's motion to dismiss (Lead Case Doc. # 36) is DENIED with respect to her 12(b)(5) defense, GRANTED with respect to her Rule 12(b)(2) defense, and DENIED AS MOOT with respect to all other 12(b) defenses;

(2)    Ms. Loulakis's motion for summary judgment (Member Case Doc. # 83) is DENIED AS MOOT;

---

[7] Neither the Foundation, the Trust Company, nor Mr. Morris have briefed what effect, if any, Ms. Loulakis's dismissal for lack of personal jurisdiction might have upon Mr. Morris's remaining claims against the Foundation and the Trust Company.  While it would be most efficient to decide all of Mr. Morris's claims at once in a single forum, Ms. Loulakis's joinder as a defendant is permissive, *see* Fed. R. Civ. P. 20(a)(2), and not required, *see* Fed. R. Civ. P. 19(a)–(b).  The action can proceed without her.

(3)     Ms. Loulakis is DISMISSED as a party in both the lead and member

cases.

DONE this 26th day of September, 2014.

_____
                    /s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE