IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THOMAS MORRIS, on behalf of and as Executor of the Estate of Amy F. Morris, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:12-CV-1020-WKW |
| TRUST COMPANY OF VIRGINIA, *et al.*, | ) ) ) ) | LEAD CASE [WO] |
| Defendants. | ) | |
| GEORGE MASON UNIVERSITY FOUNDATION, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:13-CV-930-WKW |
| THOMAS W. MORRIS, *et al.*, | ) ) ) | MEMBER CASE [WO] |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court in the member case is a motion to dismiss the third-party claims of Third-Party Plaintiffs Thomas W. Morris and Sharon Duncan, filed by Third-Party Defendant Trust Company of Virginia (hereinafter "the Trust

Company"). (Member Case Doc. # 86, 87.)[1] The motion to dismiss has been fully briefed. (Member Case Docs. # 91, 94, 97.) The Trust Company renewed its motion, with briefing, when the member case was transferred to this district. (*See* Lead Case Docs. # 62, 65, 66.)[2] Upon consideration of the parties' arguments and the relevant law, the court finds that the motion to dismiss is due to be granted for improper impleader of third-party claims.

## I.  JURISDICTION AND VENUE

Subject-matter jurisdiction is proper pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000, and there is complete diversity of citizenship between the opposing parties in each case.[3] The Trust Company does not dispute personal jurisdiction or venue.

## II.  STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed,*

---

[1] In this district's parlance, "lead case" and "member case" are terms used to identify two or more cases that have been consolidated by court order. A lead case is typically the older case and is designated as the place where case filings continue to be docketed. A member case is a non-lead case. Documents filed prior to consolidation remain on the docket of the member case.

[2] It is noted that Mr. Morris and Ms. Duncan proceeded *pro se* in the member case for quite some time, but they have been represented by counsel continuously in the lead case, and more recently, in the member case.

[3] Mr. Morris is a citizen of Alabama; Ms. Duncan is a citizen of Maryland; the Trust Company and George Mason University Foundation, Inc. are citizens of Virginia.

*Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

### III. BACKGROUND

This case presents a longstanding guardianship, conservatorship, and probate dispute that likely will be more fully elaborated upon in a future opinion. For now, abbreviated facts and procedural history suffice.

**A.** <u>Facts</u>

Mr. Morris and Ms. Duncan are siblings. In February 2007, their mother, Amy Falcon Morris, was in a car accident in Virginia Beach, Virginia. Shortly thereafter, Mr. Morris and Ms. Duncan filed an action in the Circuit Court of Virginia Beach, Virginia (hereinafter "the Virginia Court"), in which they sought to be appointed as Amy's guardians and conservators. Things did not proceed as they hoped. Amy's attorney, Karen Loulakis, who has been dismissed as a party to these cases, intervened and asserted that Amy's interests differed from Mr. Morris and Ms. Duncan's interests. George Mason University Foundation, Inc.

(hereinafter "the Foundation") also intervened based on its understanding that it would be the residual beneficiary of Amy's Estate under Amy's 1998 Will. Mr. Morris's request to be appointed conservator was denied, and instead, the Virginia Court appointed Mr. Morris as Amy's guardian and the Trust Company as conservator of her property. (Lead Case Doc. # 35-1, at 19–20, ¶¶ A, G.) The Virginia Court voided several transfers of Amy's property initiated by Mr. Morris and Ms. Duncan and directed them to convey to the Trust Company Amy's assets that they had transferred to themselves by power of attorney or other documents executed by Amy in Alabama. (Lead Case Doc. # 35-1, at 22, ¶¶ Q–R.)[4] Perhaps most significantly, the Virginia Court also declared a new will, executed in May 2007, void based on Amy's incapacity. The 2007 Will names Mr. Morris as executor and he, Ms. Duncan, and their family members as beneficiaries.

On December 19, 2008, the Virginia Court entered a final judgment against Mr. Morris and Ms. Duncan, jointly and severally, and in favor of the Trust Company as Conservator for Amy in the amount of $1,125,222, plus interest. (Lead Case Doc. # 35-1, at 38.)[5] The same order included a "separate final judgment in the amount of $100,000" against Mr. Morris and Ms. Duncan, "jointly and severally, in favor of the Foundation, with interest at the legal rate until paid,

---

[4] The same document is in the member case record at Document # 52-4.

[5] The final judgment against Mr. Morris and Ms. Duncan is in the record, attached to the Foundation's amended complaint as Doc. # 41-2 in the member case.

as that portion of attorney's fees and costs of the Foundation . . . attributable to" Mr. Morris and Ms. Duncan's contempt of court. (Lead Case Doc. # 35-1, at 38.) Mr. Morris and Ms. Duncan appealed the judgments without success.

Mr. Morris complains that under the Virginia Court's conservatorship arrangement, the Trust Company ultimately received $990,000 in assets belonging to Amy.[6] Mr. Morris claims that $302,000 of that sum was spent on Amy's care, while the remainder was allegedly squandered, handled incompetently, or spent on attorneys' fees. Mr. Morris complains that the Trust Company failed to sell Amy's house for its full value and unnecessarily incurred large tax penalties by liquidating an IRA.[7] Mr. Morris alleges that the Trust Company "cover[ed] [its] tracks" by expending several hundreds of thousands of dollars of Amy's money, during her lifetime, on attorneys' fees. (Lead Case Doc. # 29, at ¶ 40.)

After Amy died on March 25, 2011, Mr. Morris initiated probate proceedings of the 2007 Will in the Montgomery County Probate Court (hereinafter "the Alabama Probate Court"), notwithstanding the Virginia Court's

---

[6] This sum apparently includes $154,441 transferred to the Trust Company from an IRA, $290,840 from a Smith Barney account in Mr. Morris's and Amy's names, $168,690 from a Smith Barney account in Ms. Duncan's and Amy's names, and $242,525 from the sale of Amy's house. It is not completely clear what other assets of Amy's came under the Trust Company's control.

[7] The Trust Company represents that after petitioning the Virginia Court for "aid and guidance" as conservator of Amy's property, the court authorized the sale of Amy's home. (*See* Lead Case Doc. # 35-1, at 51 (April 8, 2010 order granting the Trust Company "the authority to sell the Residence at such a price and on such terms as it determines will result in a sale of the Residence as soon as practicable.").)

5

2008 determination that Amy lacked the capacity to devise the 2007 Will. On April 7, 2011, the Alabama Probate Court probated Amy's will and issued certified letters testamentary to Mr. Morris as Executor of the Estate. (Lead Case Doc. # 41-1, at 1.) On May 19, 2011, it ordered the Trust Company to release to Mr. Morris all funds belonging to Amy. (Lead Case Doc. # 41-1, at 3.) Mr. Morris claims that, when he contacted the Trust Company after Amy's death, it refused to relinquish the Estate's funds to him unless he and Ms. Duncan released their personal claims against it. The Trust Company allegedly told Mr. Morris that it would consume the remainder of the Estate in litigation expenses if Mr. Morris did not comply. (*See* Lead Case Doc. # 29, at ¶¶ 44–45.)

Mr. Morris never received the remainder of Amy's Estate. Upon the Trust Company's petition for a writ of prohibition or other appropriate relief from the Alabama Supreme Court, that court concluded that the Trust Company was never properly served with process or provided adequate notice of the Alabama Probate Court's proceedings and that the Alabama Probate Court lacked personal jurisdiction over the Trust Company. *Ex parte Trust Co. of Va.*, 96 So. 3d 67, 68 (Ala. 2012). The Alabama Supreme Court directed the probate judge to vacate the orders requiring the Trust Company to transfer conservatorship assets to Mr. Morris and enjoining the Trust Company from dispersing assets without court approval. *Id.* at 70.

By an order dated July 20, 2012, the Alabama Probate Court denied as moot Mr. Morris's "Second Petition to Compel Release of Trust Funds" because the Trust Company had already distributed Amy's assets pursuant to the orders of the Virginia Court, and the Trust Company's administration of the conservatorship estate was complete. (*See* Lead Case Doc. # 41-1, at 5.) Indeed, while Mr. Morris had presented the 2007 Will for probate in Alabama, proceedings were also ongoing in Virginia, where the Trust Company filed an interpleader action concerning the disposition of about $106,000 remaining in Amy's Estate because of Mr. Morris's and Ms. Loulakis's competing wills. The Virginia Court admitted the 1998 Will to probate in August 2011. The Virginia Court found, based on its prior rulings in 2008, that Virginia remained Amy's legal domicile at the time of her death. (*See* Lead Case Doc. # 35-2, at 7–8, ¶¶ M–N; Member Case Doc. # 52-12.) It consequently appointed Ms. Loulakis – not Mr. Morris – as the Executor of Amy's Estate. (*See* Lead Case Doc. # 35-2, at 8; Member Case Doc. # 52-12.)

On November 26, 2012, Ms. Loulakis, in her capacity as Executor, executed an Instrument of Assignment conveying to the Foundation all of the Estate's interest in the December 19, 2008 judgment in the amount of $1,125,222 against Mr. Morris and Ms. Duncan. (*See* Member Case Doc. # 41-3.)

**B.** **Procedural History**

    **1.** *Lead Case*

In the amended complaint in the lead case, Mr. Morris, proceeding as the Executor of Amy's Estate, raises three claims against the Trust Company: (1) Count One for breach of fiduciary duty; (2) Count Two for conversion; and (3) Count Seven for civil conspiracy among the Trust Company, the Foundation, and Ms. Loulakis. Motions to dismiss filed by the Trust Company and the Foundation remain pending in that case. Mr. Morris's lead case claims are not impacted by the member case motion to dismiss third-party claims presently before the court in the member case. *See infra* n.10.

    **2.** *Member Case*

On December 21, 2011, the Foundation filed suit against Mr. Morris and Ms. Duncan in the Eastern District of Virginia to enforce the Virginia Court's judgment in its favor for $100,000, plus interest. On August 19, 2013, with leave of court, the Foundation amended its complaint to add a claim to enforce the $1,125,222, plus interest, judgment in favor of Amy, which Ms. Loulakis, as Executor, assigned to the Foundation as the beneficiary under the 1998 Will. (*See* Member Case Doc. # 52-14.)[8]

---

[8] As of October 3, 2013, when the Foudation moved for summary judgment, it represented that it was seeking a total of $1,574,851.34 – a sum representing both judgments plus post-judgment interest under Virginia law. (Member Case Doc. # 52, at 2.)

8

Mr. Morris and Ms. Duncan filed an answer to the Foundation's amended complaint with counterclaims against the Foundation and "crossclaims" against Ms. Loulakis and the Trust Company. (Member Case Doc. # 49.) The crossclaims are more accurately labeled third-party claims.[9] The third-party claims of Mr. Morris and Ms. Duncan against the Trust Company include counts for negligence, wantonness, conspiracy, promissory fraud, fraudulent suppression, breach of fiduciary duty, conversion, abuse of process, and tortious interference with inheritance.[10] Mr. Morris and Ms. Duncan seek millions of dollars in compensatory and punitive damages. (Member Case Doc. # 49, at 41.)

There are pending cross-motions for summary judgment between the original parties (*i.e.*, the Foundation, Mr. Morris, and Ms. Duncan). In a separate memorandum opinion and ordered entered today, Ms. Loulakis was dismissed from the case for lack of personal jurisdiction.

---

[9] Neither Ms. Loulakis nor the Trust Company was originally a party to the member case litigation. Pursuant to Rule 13(g), "a crossclaim may only be asserted against *coparties* in the action." Charles Alan Wright, et al. 6 Fed. Practice & Procedure § 1431 (3d ed.) (emphasis added). Thus, Mr. Morris and Ms. Duncan's claims against Ms. Loulakis and the Trust Company are really third-party claims. *See Newhouse v. Probert*, 608 F. Supp. 978, 985 (W.D. Mich. 1985) (concluding that where a defendant filed what was captioned as a "cross-complaint" and the cross defendants were not parties to the action, the cross complaint was actually a third-party complaint subject to the requirements of Rule 14(a)).

[10] The tort claims pending in the lead case are not identical to the tort claims pending in the member case. In the lead case, Mr. Morris sues only "on behalf of and as Executor for the Estate of Amy F. Morris." (Lead Case Doc. # 36, at 1.) Even if Mr. Morris had not re-pleaded his amended complaint as he did, the court has dismissed the claims he filed on behalf of himself as abandoned or as failing to state a claim under Alabama law. (*See* Lead Case Doc. # 28, at 6–7 & n.4.) In the member case, Mr. Morris and Ms. Duncan raise their counterclaims and third-party claims "in [their] individual capacit[ies]." (Member Case Doc. # 49.)

### 3.  *Transfer and Consolidation*

On November 15, 2013, the Trust Company filed its motion to dismiss the third-party claims against them, or alternatively, to transfer venue.  (*See* Member Case Docs. 86, 87, 88, 89.)  Mr. Morris and Ms. Duncan opposed the Trust Company's motion to dismiss. (Member Case Doc. # 91.)  Accepting an invitation to opt-out of a quandary, the Eastern District of Virginia granted the Trust Company's Motion to Transfer Venue to this court on December 9, 2013, without ruling on the alternative motion to dismiss.  (*See* Member Case Docs. # 92, 93.) After the Eastern District of Virginia transferred the member case to this district, the two actions were consolidated upon the Trust Company's motion and after finding that consolidation was the simplest and most expeditious way of resolving these proceedings.  (*See* Lead Case Doc. # 57.)

## IV.  DISCUSSION

The Trust Company asserts that Mr. Morris's and Ms. Duncan's individual-capacity impleader claims against the Trust Company as a third-party defendant were not properly raised pursuant to Federal Rule of Civil Procedure 14.  The Trust Company raises the issue in the form of a motion to dismiss the third-party complaint pursuant to Rule 12(b)(6) or motion to strike pursuant to Rule 14(a)(4). (Member Case Doc. # 87, at 3 n.2.; *see also* Lead Case Doc. # 62 (post-transfer

renewed motion to dismiss, citing Eleventh Circuit authorities).)[11]  The Trust Company argues that Mr. Morris and Ms. Duncan's third-party claims against it are not derivative of the Foundation's underlying judgment causes of action against Mr. Morris and Ms. Duncan.  (Member Case Doc. # 87, at 4–6.)

Rule 14(a)(1) governs third-party practice and provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty *who is or may be liable to [the original defendant] for all or part of the claim against it*." (emphasis added).  It is well-settled that the third-party's liability must be in some way derivative of the outcome of the primary suit against the original defendant.  *See United States v. Olavarrieta*, 812 F.2d 640 (11th Cir. 1987).  Derivative liability exists when the third-party is "liable secondarily to the original defendant in the event that the [original defendant] is liable to the plaintiff." *Allstate Ins. Co. v. Hugh Cole Builder, Inc.*, 187 F.R.D. 671, 673 (M.D. Ala. 1999) (Albritton, J.) (internal quotation marks and citation omitted).  Therefore, the defendant may not use impleader to raise independent claims against third parties, even if the claims arise out of the same general facts at the basis of the original suit. *Id.*

---

[11] Rule 14 allows "[a]ny party [to] move to strike the third-party claim, to sever it, or to try it separately." Fed. R. Civ. P. 14(a)(4).  The court considers the Rule 14(a) objection to improper impleader under the motion-to-dismiss standard.  *Cf. Coates v. CTB, Inc.*, 173 F. Supp. 2d 1200, 1202 (M.D. Ala. 2001) (Thompson, J.).

Mr. Morris and Ms. Duncan, with the assistance of counsel, have opposed the Trust Company's motion to dismiss for improper impleader. (Member Case Doc. # 91, at 2–3.)[12] They contend that the Trust Company is liable to them because the Trust Company (1) participated in the litigation that resulted in the two judgments against them, (2) attempted to collect on the same judgments, and (3) "had multiple opportunities to reduce, adjust, or forgive all or part" of the judgments. (Member Case Doc. # 91, at 2–3.) None of these arguments answers the pertinent question of how the Trust Company is secondarily liable for Mr. Morris and Ms. Duncan's liability to the original plaintiff, the Foundation. If Mr. Morris and Ms. Duncan's third-party claims were truly derivative of Mr. Morris's and Ms. Duncan's liability on the two monetary judgments entered by the Virginia Court, then the Trust Company would no longer be liable to Mr. Morris and Ms. Duncan for their alleged torts if the court were to conclude that Mr. Morris and Ms. Duncan were not liable to the Foundation. *See Faser v. Sears, Roebuck & Co.*, 674 F.2d 856, 860 (11th Cir. 1982). The court can only assume that Mr. Morris and Ms. Duncan would denounce such a result. That is because their tort claims are indeed "separate and independent claim[s]" that just happen to arise from a series

---

[12] Mr. Morris and Ms. Duncan cite subsection (a)(3) of Rule 14 as the standard, rather than subsection (a)(1). Rule 14(a)(3) applies to the original plaintiff's claims against any impleaded third-party defendants. Mr. Morris and Ms. Duncan are original defendants – not original plaintiffs. Rule 14(a)(3) is inapplicable here.

12

of related factual events. *See Olavarrieta*, 812 F.2d at 643. The tort claims are not derivative of the original suit.

For these reasons, the Trust Company's motion to dismiss the third-party claims (Member Case Doc. # 86) is due to be granted. And because the improper impleader finding resolves all third-party claims against the Trust Company in the member case, the Trust Company's additional arguments for dismissal of those claims pursuant to Rule 12(b)(6) need not be addressed.

## V. CONCLUSION

In accordance with the foregoing analysis, it is ORDERED that:

(1) The Trust Company's motion to dismiss third-party claims for improper impleader (Member Case Doc. # 86 (as renewed in Lead Case Doc. # 62)) is GRANTED;[13]

(2) The Trust Company is DISMISSED as a third-party defendant in the member case.

DONE this 26th day of September, 2014.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE

---

[13] The Clerk of the Court is DIRECTED to terminate the pending motion in each case.

13